UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
YAHUI ZHANG, *individually and on behalf of* :
*those similarly situated*                                   :
                                                            :
                                         Plaintiffs,        :          15-CV-4946 (VSB)
                                                            :
                    - against -                             :      __MEMORANDUM & OPINION__
                                                            :
                                                            :
AKAMI INC., d/b/a AKAMI SUSHI, et al.                       :
                                                            :
                                         Defendants         :
                                                            :
------------------------------------------------------------X

```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #: _____        │
│ DATE FILED: ____9/26/2017____   │
└─────────────────────────────────┘
```

<u>Appearances</u>:

John Troy
Troy Law, PLLC
Flushing, New York
*Counsel for Plaintiffs*

Eugene Kroner
Michael Aaron Brand
Vincent Wong
Law Offices of Vincent S. Wong
New York, New York
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

        Before me is the motion of Defendants Akami Inc. ("Akami"), Yuan Hong Chen a/k/a

Andy Chen, Liang Jin Zhuo, and Jane Doe (collectively, "Defendants") to dismiss certain claims

alleged in Plaintiff Yahui Zhang's amended complaint for failure to state a claim upon which

relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and lack of subject matter

jurisdiction under Rule 12(b)(1).  (Doc. 29.)  Also before me is the motion of Plaintiff to dismiss

the counterclaims of Defendants for lack of subject matter jurisdiction pursuant to Rule 12(b)(1),

or in the alternative, for failure to state a claim upon which relief can be granted under Rule

12(b)(6).  (Doc. 26.)  For the reasons that follow, Defendants' motion is GRANTED with regard to Counts XII and XIII, and DENIED with regard to Counts I through XI.  Because I find there is no subject matter jurisdiction over Defendants' counterclaims, Plaintiff's motion is GRANTED without prejudice to Defendants' counterclaims being asserted in state court.

## I.   **Background**[1]

Plaintiff Zhang, on behalf of himself and other employees similarly situated, brought this action against Defendants for alleged violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.* (Counts I & III), the New York Labor Law (the "NYLL") (Counts II, IV–V, & VII–X), breach of implied contract (Counts VI & XI), fraudulent filing of Internal Revenue Service ("IRS") returns (Count XII), and deceptive acts and practices in violation of New York General Business Law ("GBL") § 349 (Count XIII).  Plaintiff alleges a systemic practice of Defendants failing to pay their employees minimum wage and overtime compensation, refusing to properly record time spent by employees working, failing to provide Time of Hire Notices, and failing to provide employees with accurate paystubs.  (Am. Compl. ¶¶ 2–5.)[2]  Plaintiff further claims that he was required to commit over twenty percent of his workday to doing non-tipped work—including cutting oranges, putting in salad dressing and soy sauce, loading and unloading grocery items, and cutting the cardboard used in delivery bags—without receiving notification of the tip credit claimed by Defendants.  (*Id.* ¶¶ 24–26.)  Finally, Plaintiff alleges that Defendants failed to post the required New York State Department of Labor posters informing their employees about the minimum pay rates, overtime pay, tip credit, and

---

[1] The following facts are taken from the amended complaint filed on August 6, 2015 ("Amended Complaint") and from the counterclaims filed on July 24, 2015 ("Counterclaims"), and are assumed to be true for purposes of these motions.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002); *see also Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 197 (S.D.N.Y. 2008).  However, my references to the factual allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to the Amended Complaint, filed in this action on August 6, 2015.  (Doc. 17.)

payday information.  (*Id.* ¶ 34.)

Akami originally hired Zhang to work as a deliveryman on or about August 20, 2014.
(*Id.* ¶ 35.)  From August 20, 2014 until May 4, 2015, Zhang worked twelve hours on
Wednesdays through Sundays, and six hours on Tuesdays, for a total of sixty-six hours a week.
(*Id.* ¶¶ 36–37.)  Not only did Defendants not maintain, establish, or preserve weekly payroll
records, but Defendants also required Zhang to sign papers affirming false hours worked.  (*Id.*
¶¶ 93–94.)  Defendants did not give Zhang a fixed time for lunch or dinner, and paid him
$550.00 every half month, (*id.* ¶¶ 38–39), did not compensate him for overtime, nor did they
give him "spread of hours" premium for shifts lasting longer than ten hours, (*id.* ¶¶ 40–41).

With respect to the delivery vehicles of all deliverymen, which includes bicycles and
electric bicycles, Defendants required deliverymen to bear all out-of-pocket costs.  (*Id.* ¶¶ 78–
79.)  The deliverymen performed these deliveries for the sole benefit of Defendants, but
Defendants never compensated Zhang or other similarly situated employees for any expenses
incurred in connection with their delivery vehicles.  (*Id.* ¶¶ 82, 85.)

Additionally, as part of their answer to the original complaint, Defendants asserted
counterclaims for intentional infliction of emotional distress, sexual harassment, and prima facie
tort.  (*See generally* Countercl.)[3]  Defendants claim that from about September 2014 to May
2015, the approximate period of Zhang's employment, Zhang sent Defendants inappropriate,
vulgar, sexual, harassing, demeaning, and disturbing messages via telephone or electronic
messenger service, including pictures and videos.  (*See generally id.*)

---

[3] "Countercl." refers to the counterclaims filed by Defendants on July 24, 2015 (the "Counterclaims"), beginning on
page 16 of Defendants' Answer to the Complaint With Counterclaims.  (Doc. 10.)

## II.     **Procedural History**

Plaintiff commenced this action by filing a putative collective and class action complaint on June 25, 2015 (the "Complaint").  (Doc. 1.)  On July 24, 2015, Defendants answered the Complaint, and in their answer asserted the Counterclaims.  (Doc. 10.)  Plaintiff filed a letter requesting a pre-motion conference concerning his anticipated motion to dismiss the Counterclaims on July 30, 2014, (Doc. 14), and Defendants filed a response on August 3, 2015, (Doc. 15).  Plaintiff filed his Amended Complaint on August 6, 2015.  (Doc. 17.)

On August 20, 2015, Defendants filed a letter requesting a pre-motion conference on their anticipated motion to dismiss the Amended Complaint, (Doc. 20), and on August 26, 2015, Plaintiff filed his response, (Doc. 21).  After the pre-motion conference, which was held on August 27, 2015, and in response to issues raised during the conference, Plaintiff submitted a letter providing me with case law to support his position regarding Counts XII and XIII in the Amended Complaint, (Doc. 22), and thereafter submitted another letter on September 10, 2015 to advise me that he intended to pursue his motion to dismiss the Counterclaims, (Doc. 23).  On September 11, 2015, Defendants filed a letter representing that Defendants did not gross $500,000.00 annually as required to impose liability under the FLSA, and indicating their intention to file a motion to dismiss.  (Doc. 24.)

On October 13, 2015, Plaintiff filed his motion to dismiss Defendants' Counterclaims, (Docs. 26–28), and Defendants filed their motion to dismiss the Amended Complaint, (Docs. 29–31).  On November 10, 2015, Plaintiff and Defendants, respectively, filed their oppositions, (Docs. 32–33; Doc. 34), and on November 24, 2015, filed their replies, (Doc. 35; Doc. 36).

### III.   Legal Standard

#### A.   *Rule 12(b)(1)*

A claim may be "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  To survive a Rule 12(b)(1) motion to dismiss, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).  Furthermore, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Id.*

#### B.   *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences

unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

## C. *Rule 15(a)*

A party may amend its pleading once as a matter of course within twenty-one days after serving it, or twenty-one days after service of a responsive pleading, or after service of a motion under Rules 12(b), 12(e), or 12(f) of the Federal Rules of Civil Procedure, whichever is earlier. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend its pleading with the opposing party's written consent, or upon leave of the court. Fed. R. Civ. P. 15(a)(2). Generally, leave of court to amend a pleading should be freely granted "when justice so requires." *Id.*; *see also A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311, 315 (S.D.N.Y. 2014). However, the Second Circuit has held that "[l]eave to amend, though liberally granted, may properly be denied for: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks and citation omitted). Absent a showing of bad faith or undue prejudice, however, "[m]ere delay . . . does not provide a basis for the district court to deny the right to amend." *Id.* (internal quotation marks omitted).

6

"Leave to amend may be denied as futile when the pleading would not survive a motion to dismiss." *A.V.E.L.A.*, 34 F. Supp. 3d at 319.  Under that standard, the proper inquiry "is not whether a [moving party] will ultimately prevail but whether [that party] is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  A court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's favor.  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110–11 (2d Cir. 2010).

## IV.   Discussion

### A.   *Defendants' Motion to Dismiss the Amended Complaint*

Defendants move pursuant to Rule 12(b)(6) to dismiss Counts I, III, XII, and XIII[4] of the Amended Complaint for failure to state a claim.  (Defs.' Mem. 2.)[5]  Defendants also claim lack of supplemental jurisdiction over Counts VI and XI, Plaintiff's breach of implied contract claims.  (*Id.*)  Finally, Defendants conditionally move to dismiss Counts II, IV–V, and VII–X, all brought under the NYLL, for lack of supplemental jurisdiction if I dismiss the FLSA claims.  (*See id.*)  I will now address these arguments in turn.

#### 1.   Failure to State a Claim

##### a.   *Deceptive Acts and Practices Under GBL § 349 (Count XIII)*

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  To state a § 349 claim, a plaintiff must allege that "(1) the act or practice was consumer-oriented;

---

[4] Counts I and II of the Amended Complaint allege violations of the FLSA, Count XII alleges fraudulent filing of federal tax returns pursuant to 26 U.S.C. § 7434, and Count XIII asserts a claim for deceptive acts and practices in violation of New York General Business Law ("GBL") § 349.

[5] "Defs.' Mem." refers to the Memorandum of Law submitted in support of Defendants' motion to dismiss.  (Doc. 30.)

(2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009); *see also Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).

With regard to the first element, Zhang must plead "consumer-oriented" conduct. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank N.A.*, 85 N.Y.2d 20, 25 (1995). "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue potentially affects similarly situated consumers." *Wilson v. Northwestern Mutual Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010). "Although consumer-oriented conduct does not require a repetition or pattern of deceptive conduct, a plaintiff must demonstrate that the acts or practices have a broader impact on consumers at large." *Id.* In light of this broader-impact requirement, New York courts have recognized that various activities do not fall within the reach of this statute, including "[p]rivate contract disputes, unique to the parties." *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25.

In his opposition, Zhang does not address or respond to Defendants' motion to dismiss Count XIII. Therefore, I find that Zhang has abandoned his GBL claim alleged in Count XIII and could grant Defendants' motion to dismiss with regard to Count XIII on that basis alone. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014) ("Where a partial response to a motion is made . . . a court may, when appropriate, infer from a [counseled] party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

In any event, addressing the substance of the allegation and construing the Amended Complaint in a light most favorable to Zhang, I find that Defendants' alleged conduct does not amount to "consumer oriented" conduct. The only allegation asserted by Zhang in support of his claim under section 349 is that it "provides that if any person willfully files a fraudulent

information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return."  (Am. Compl. ¶ 121.)  As an initial matter, section 349 contains no such language, and Plaintiff has not cited case law applying section 349 to the filing of fraudulent information returns under similar factual circumstances to this case.  In addition, the alleged filing of fraudulent tax returns—itself based on speculative and conclusory assertion that "it is highly unlikely that Defendant[s] reported accurate information on their federal and state income tax returns," (Pl.'s Opp. 7–8)[6]— is not consumer-oriented conduct.  *See City of N.Y. v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 562–63 (S.D.N.Y. 2005) ("The act of not filing reports understandably results in the City not knowing which consumers to tax, but the Court finds there is no basis for the City to claim that the act of not filing the reports misleads consumers in any way, as required under the statute."); *cf. Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 405–06 (S.D.N.Y. 2010) (permitting a § 349 claim to survive a motion to dismiss where the claim was based on the defendant Hotels.com charging *consumers* more taxes than it pays the hotels, and also where the specific wording of an agreement allowed the claim to proceed).  None of the allegations in the Amended Complaint support an assertion that Defendants participated in consumer-oriented conduct.  Rather, the Amended Complaint describes conduct of a private employer-employee dispute with no perceived impact on consumers.

Therefore, I find that the Amended Complaint does not allege a plausible claim under GBL § 349.  Defendants' motion to dismiss Count XIII is GRANTED.

---

[6] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss.  (Doc. 34.)

b.  *Violations of 26 U.S.C § 7434 (Count XII)*

"If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."  26 U.S.C. § 7434(a); *see also Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 566 (2d Cir. 2011) (per curiam) (§ 7434 is a "provision that creates a civil damages remedy for the willful filing of fraudulent 'information return[s]'") (alteration in original).  An "information return" is defined as "any statement described in section 6724(d)(1)(A)," which includes, among other things, statements related to information returns "with respect to income tax withheld."  26 U.S.C. § 6724(d)(1)(A)(vii).

The plain language of the statute requires that a person "willfully files" a fraudulent information return.  *See Katzman*, 660 F.3d at 568.  "[A]n allegation that a person intentionally failed to file a required information return does not state a claim under § 7434."  *Id.*  "An actionable claim only arises . . . when 'the information return itself' is fraudulent."  *Katzman v. Essex Waterfront Owners LLC*, No. 09 Civ. 7541(DAB), 2010 WL 3958819, at *3 (S.D.N.Y. Sept. 29, 2010) (citation omitted), *aff'd,* 660 F.3d 565 (2d Cir. 2011).

The Amended Complaint does not allege that Defendants willfully filed a fraudulent information return.  Rather, the Amended Complaint merely parrots the statutory requirements and outlines its claim for relief.  (*See* Am. Compl. ¶¶ 117–19.)  Although Plaintiff in his opposition identifies facts related to his claims under the FLSA and NYLL as support for his § 7434 claim, the only relationship between these claims is that Defendants are required to report wage compensation on their information returns with respect to income tax withheld and given to Plaintiff.  Plaintiff then asserts that since he was not properly compensated for non-tipped work, "[i]t is highly unlikely that Defendants reported accurate information on their federal and state

10

income tax returns." (Pl.'s Opp. 7–8.) These assertions do not appear in the Amended Complaint, and even if they did they are insufficient to plead a plausible claim, much less a "willful" filing of information returns.

Therefore, Defendants' motion to dismiss Count XII is GRANTED.

### c.  *Violations of the FLSA (Counts I & III)*

Defendants also seek to dismiss Plaintiff's claim that Defendants failed to pay him, and other similarly situated employees, the required minimum and overtime wages in violation of the FLSA. (*See generally* Am. Compl.) Defendants seek dismissal of these counts based upon Plaintiff's purported failure to allege that Defendants are an "enterprise engaged in commerce," subject to liability under the FLSA. (Defs.' Mem. 9–11.)

The FLSA provides coverage under its minimum wage and overtime provisions to each employee who "is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206, 207. These two types of coverage under the FLSA have been termed "individual coverage" and "enterprise coverage." *Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009) (citing *Bowrin v. Catholic Guardian Society*, 417 F. Supp. 2d 449, 457 (S.D.N.Y. 2006)).

The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). In relevant part, the FLSA also defines an "enterprise engaged in commerce or in the production of goods for commerce" as an enterprise that (1) "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by

any person"; and (2)  has "an annual gross volume of sales made or business done [totaling at

least] $500,000 (exclusive of excise taxes at the retail level that are separately stated)."  *Id.*

§ 203(s)(1); *see also Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 84

(E.D.N.Y. 2010).

Zhang alleges in his Amended Complaint that Defendant Akami "is a business engaged

in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars

($500,000) per year" and that Akami "purchased and handled goods moved in interstate

commerce."  (Am. Compl. ¶¶ 10–11.)  Contrary to Defendants assertion, these are not "legal

conclusion[s] couched as [] factual allegation[s]."  (Defs.' Mem. 11.)  The allegations are factual

assertions.

Counsel for Defendants asserted in a letter submitted to me that upon "reviewing several

tax documents," it appears that Defendants did not gross $500,000.00 annually.  (Doc. 24).[7]  In

any event, Defendants do not raise this argument in their opposition, nor did they attach any

supporting documents purporting to demonstrate Defendants gross annual income was below

$500,000 during the relevant time period.[8]  I find the allegations in Plaintiff's Amended

Complaint sufficient state claims under the FLSA.  *See Jia Hu Qian v. Siew Foong Hui*, No. 11

Civ. 5584 (CM), 2012 WL 1948820, at *3 (S.D.N.Y. May 30, 2012) (facts pled sufficient to

---

[7] In any event, I cannot consider matters outside of the pleadings without converting this motion into a motion for summary judgment and giving both parties the opportunity to "conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56."  *See Chambers v. Time Warner Inc.*, 282 F.3d 147, 154 (2d Cir. 2002); *see also Velez v. Vassallo*, 203 F. Supp. 2d 312, 328–33 (S.D.N.Y. 2002) (finding that whether a defendant is an "enterprise engaged in commerce" is not jurisdictional).  However, I note that courts in this district have held that tax returns, some of which were unsigned, were insufficient to support a motion for summary judgement where the plaintiffs submitted evidence at odds with the volume of business that the defendants professed.  *See Jai Fu Chen v. New 9th Ave Pearl on Sushi Inc.*, No. 14-CV-580 (JPO), 2015 WL 3947560, at *3 (S.D.N.Y. June 29, 2015).

[8] Because I find that Plaintiff sufficiently stated a claim under the FLSA, I do not reach the issue of lack of supplemental jurisdiction over the NYLL claims.  (*See* Defs.' Mem. 11.)

allege enterprise coverage over defendant restaurant where the complaint alleged merely that

defendant had employees engaged in commerce or the production of goods for commerce and

handled, sold, or otherwise worked on good or materials that had been moved in or produced for

commerce by any person, and had an annual gross volume of sales of not less than $500,000); *cf.*

*Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (noting the

"legislative history clearly demonstrates that Congress intended to extend the coverage of the

FLSA to companies that use products that have moved in interstate commerce" and that the

amendment "leads to the result that virtually every enterprise in the nation doing the requisite

dollar volume of business is covered by the FLSA").

Defendants' motion to dismiss Counts I and III of the Amended Complaint is therefore

DENIED.

## 2.   Lack of Supplemental Jurisdiction

### a.   *Breach of Implied Contract (Counts VI and XI)*

Zhang claims breach of an implied contract for the reimbursement of all costs and

expenses of bicycles or electric delivery vehicles, including any depreciation, insurance,

maintenance, and repairs.  (Am. Compl. ¶¶ 77–86, 107–16.)  According to Zhang, (1)

Defendants required their deliverymen to bear all out-of-pocket expenses associated with their

delivery vehicles, (2) plaintiffs purchased delivery vehicles at their own expense, (3) plaintiffs

performed deliveries for the sole benefit of Defendants, (4) there was an implied contract

whereby Defendants would compensate plaintiffs for the out-of-pocket costs associated with

their delivery vehicles, and (5) Defendants never compensated plaintiffs.  (*See id.*)  Plaintiff

makes these claims with respect to all potential plaintiffs (Count VI) and himself (Count XI).

Defendants move to dismiss Zhang's breach of implied contract claims asserting that (1) there is

a lack of subject matter jurisdiction because the underlying facts are insufficiently related to the FLSA claims, and (2) the claims are duplicative of one another.  (*See* Defs.' Mem. 12–14.)

It is well established that "[f]ederal courts are courts of limited jurisdiction whose power is limited strictly by Article III of the Constitution and congressional statute." *United Food & Commercial Workers Union v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 303 (2d Cir. 1994).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Claims form part of the "same case or controversy" for purposes of § 1367(a) if "the federal claim and state claim [] stem from the same 'common nucleus of operative fact.'"  *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (citing *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).[9]

"To make this determination, courts 'have traditionally asked whether the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily

---

[9] Although the Second Circuit has noted that the Seventh Circuit's decision in *Channell v. Citicorp National Services, Inc.*, 89 F.3d 379, 385 (7th Cir.1996), suggests that only a "loose factual connection" between the federal and state law claims is necessary for a court to exercise supplemental jurisdiction, the Second Circuit has not endorsed that test, but rather continues to apply the well-known *Gibbs* test of "a common nucleus of operative facts."  *See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 (2d Cir. 2004); *see also LaChapelle v. Torres*, 37 F. Supp. 3d 672, 680–81 (S.D.N.Y. 2014) (noting that "loose factual connection" standard has not been adopted in the Second Circuit).

brought the facts underlying the state claim before the court.'" *LaChapelle*, 37 F. Supp. 3d at 680 (quoting *Achtman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 335 (2d Cir. 2006)). As such, "supplemental jurisdiction should not be exercised 'when the federal and state claims rest on essentially unrelated facts.'" *Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397, 401 (S.D.N.Y. 2010) (quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

If the standard for exercising supplemental jurisdiction under § 1367(a) is satisfied, a court may decline to exercise supplemental jurisdiction only if one of the categories listed in § 1367(c) apply:  "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c); *see also Shahriar*, 659 F.3d at 245 (citing *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)).  Additionally, the Second Circuit has held that if one of the § 1367(c) factors is applicable, a district court should still not decline to exercise supplemental jurisdiction unless doing so would not promote the values articulated in *Gibbs*:  judicial economy, convenience, fairness, and comity.  *See Shahriar*, 659 F.3d at 245 (citing *Jones*, 358 F.3d at 214).

"The FLSA prohibits employers from requiring employees to purchase the tools of their trade or give any money back to their employers, 'when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.'" *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725(DC), 2010 WL 4159391, at *4 (S.D.N.Y. Sept. 30, 2010) (quoting 29 C.F.R. § 531.35); *see also Maldonado v. La Nueva*

*Rampa, Inc.*, No. 10 Civ. 8195(LLS)(JLC), 2012 WL 1669341, at *7 (S.D.N.Y. May 14, 2012)

("'[E]mployers can require employees to bear the costs of acquiring and maintaining tools of the

trade so long as those costs, when deducted from the employees' weekly wages, do not reduce

their wage to below the required minimum.'" (quoting *Lin v. Benihana Nat'l Corp.*, 755 F. Supp.

2d 504, 511–12 (S.D.N.Y. 2010))).  Although involving a decision issued following a trial, *Yu G.

Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008), is instructive here.  In *Yu G. Ke*,

Magistrate Dollinger considered the expenses incurred by deliverymen in buying or repairing

bicycles or other means of transportation in the context of measuring whether the defendants

complied with minimum wage and overtime requirements.  *Id.* at 256.  Judge Dollinger decided

that vehicular transportation was "a necessary component of the job of the deliverymen," and

without such transportation "it would have been impossible for the deliverymen to carry out their

job in a manner that satisfied the business needs of the restaurant and the defendants' demands

about performance."  *Id.* at 257–58.  As the plaintiffs there testified that they used the bicycles

primarily for work, Judge Dollinger took into account the costs incurred in purchasing and

repairing these bicycles when measuring the plaintiffs' wages.  *Id.* at 258; *see also Jin M. Cao*,

2010 WL 4159391, at *4 (delivery workers entitled to damages for money spent on bicycles,

found to be "tools of the trade").  Calculation of the minimum wage under the FLSA claims

asserted by Plaintiff will likely involve the same core facts supporting the breach of implied

contract claims.

  As pertaining to Defendants' argument that the claims in Counts VI and XI are

duplicative of one another, Count VI asserts the implied contract claims with regard to all

plaintiffs and Count XI asserts such claims only as to Plaintiff Zhang.  At this stage of the

litigation I will allow both claims to proceed, as to do otherwise would elevate form over

substance.

In light of the foregoing, I find that the FLSA claims and implied contract claims share a common nucleus of operative facts, such that my exercise of supplemental jurisdiction is warranted, and decline at this stage to dismiss either Counts VI or XI as duplicative. Accordingly, Defendants' motion to dismiss Plaintiff's breach of implied contract claims is DENIED.

### B.    *Plaintiff's Motion to Dismiss Defendants' Counterclaims*

In determining whether to exercise supplemental jurisdiction over Defendants' Counterclaims, I apply the same legal standard discussed above in relation to Plaintiff's cause of action for breach of implied contract.  Defendants assert Counterclaims for intentional infliction of emotional distress, sexual harassment, and prima facie tort.  (Countercl. ¶¶ 11–29.)  Zhang argues that supplemental jurisdiction over Defendants' Counterclaims does not exist because there is only a "tenuous factual link" between the Counterclaims and the FLSA claims—namely, "Plaintiff's employment at Defendants' business."  (Pl.'s Mem. 4.)[10]  Plaintiff argues that the facts underlying Defendants' Counterclaims involve "graphic messages" that are in no way relevant to the facts underlying the FLSA claims.  (*Id.* at 5.)  In response, Defendants assert that the Counterclaims and the FLSA claims share a same common nucleus of operative facts because the time and dates of the improper messages "will show that Plaintiff was not at work as Plaintiff alleges," and both the FLSA claims and Counterclaims "will require testimony from the same witnesses, reliance on the same documents, and determination of the same facts."[11]  (Defs.'

---

[10] "Pl.'s Mem." refers to Plaintiff's Memorandum of Law in Support of its Motion to Dismiss Defendants' Counterclaims.  (Doc. 27.)

[11] Defendants also argue that Plaintiff's motion to dismiss the Counterclaims is premature since they have not filed an answer to the Amended Complaint.  I find this argument unpersuasive.  Although an amended complaint "ordinarily supersedes the original and renders it of no legal effect," *Int'l Controls Corp v. Vesco*, 556 F.2d 665, 668–69 (2d Cir. 1977) (citations omitted), courts within and outside of this district have suggested that

Opp. 8.)[12]  I agree with Plaintiff.

Supplemental jurisdiction for claims arising from the employment relationship is

"'[t]ypically . . . appropriate . . . because those claims arise from the same underlying period.'"

*Chaluisan*, 698 F. Supp. 2d at 405 (alteration in original) (citations omitted).  However, where

the employment relationship is the sole connecting thread between claims, it is insufficient to

support subject matter jurisdiction.  *See, e.g.*, *Ozawa v. Orsini Design Assocs., Inc.*, No. 13-CV-

1282 (JPO), 2015 WL 1055902, at *12 (S.D.N.Y. Mar. 11, 2015) (where there was "little beyond

the employment relationship" joining the state law counterclaim of unjust enrichment with the

plaintiff's FLSA overtime claims, supplemental jurisdiction was not warranted); *Nicholsen v.*

*Feeding Tree Style, Inc.*, No. 12 Civ. 6236(JPO), 2014 WL 476355, at *2 (S.D.N.Y. Feb. 6,

2014); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008) ("[T]he

employment relationship does not establish a 'common nucleus of operative fact' where it is the

sole fact connecting Plaintiffs' federal overtime claims and [Defendants'] state law

counterclaims.").

Although Defendants' Counterclaims state three separate claims for relief, the gravamen

of each claim is the same—that during the course of his employment, Zhang sent "inappropriate,

vulgar, sexual, harassing, insulting, demeaning, disturbing, and improper messages via telephone

---

counterclaims can survive a subsequent amended complaint, assuming that the counterclaims are not otherwise
withdrawn in an answer to that amended complaint.  *Cf. Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d
678, 705–06 (D. Md. 2011) (failure to reassert counterclaims when responding to an amended complaint did not
waive them, given that the counterclaims do not need to be contained in an answer but only a pleading, and
defendant otherwise manifested an intent to pursue the counterclaims by moving against the plaintiffs' motion to
dismiss them and moving to amend them); *Am. Home Assur. Co. v. Merck & Co.*, 354 F. Supp. 2d 318, 320–21
(S.D.N.Y. 2005) (motion to dismiss the counterclaims moot given that the amended answer no longer charged either
company with fraud).  Here, Defendants concede that they intend to assert the same Counterclaims in any answer
they file in response to the Amended Complaint.  (8/27 Tr. 3:2-7.)  "8/27 Tr." refers to the transcript of the August
27, 2015 pre-motion conference held in this matter.

[12] "Defs.' Opp." refers to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss. (Doc.
34.)

and/or electronic messenger service."  (Countercl. 16 ¶ 1.)  Here, while Defendants attempt to

forge a link to the alleged minimum wage and overtime violations by arguing in their opposition

that the sexually explicit messages will cast doubt on the hours Plaintiff worked, (*see generally*

Defs.' Opp.), I find that the facts underlying the FLSA claims and Counterclaims do not

substantially overlap.  *See LaChapelle*, 37 F. Supp. 3d at 680 (quoting *Achtman*, 464 F.3d at

335); *see also Thomas v. EONY, LLC*, No. 13-CV-8512 (JPO), 2015 WL 1809085, at *5–6

(S.D.N.Y. Apr. 21, 2015) (finding that the sexual harassment, disability discrimination, and tort

claims involved a significantly different set of facts, such that there would be little evidentiary

overlap and explaining that, with respect to proving intentional infliction of emotional distress,

"[t]he evidence of Plaintiffs' hours worked and their status as employees will have no material

overlap with any of the conduct set out in the complaint that could be categorized as 'extreme

and outrageous'"); *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 393 (E.D.N.Y. 2007)

(declining to exercise supplemental jurisdiction over sexual harassment claims brought by the

plaintiff because the only factual link to the FLSA claims was that both events occurred during

the course of the plaintiff's employment); *cf. Chaluisan*, 698 F. Supp. 2d at 402–03 (state

common law claims involving failure to pay a vested vacation pay and bonus would require

consideration of similar evidence as the plaintiff's FLSA claim, including analysis of the

employment agreement and records).

     Judge Paul A. Crotty's decision in *Torres* is instructive here.  The plaintiff in *Torres*

brought a class action under the FLSA and other state law claims.  *Torres*, 628 F. Supp. 2d at

453.  The defendant brought counterclaims under the faithless servant doctrine, which states that

an employer can recover compensation paid to a faithless servant upon showing "that the

employee's disloyal activity was related" to his duties, and "that the disloyalty permeated the

employee's service in its most material and substantial part." *Id.* at 466.  The defendant specifically alleged that the plaintiff sexually harassed coworkers and falsified information on his employment application.  *See id.*  In deciding not to exercise supplemental jurisdiction over the counterclaims, Judge Crotty noted that while the plaintiffs' wage-and-hour claims centered on the defendant's compensation practices, the counterclaims focused on "discrete allegations of misconduct" pertaining to only two of the plaintiffs, and the "*essential* facts . . . '[were] not so closely related that resolving both sets of issues in one lawsuit would yield judicial efficiency.'" *Id* at 467–68 (citation omitted) (emphasis added).

Like the sexual harassment and other state law claims alleged by the defendants in *Torres*, the essential facts Defendants will have to establish to prove their Counterclaims are significantly different from those necessary to prove wage and overtime violations under the FLSA.  Indeed, most of the facts integral to Defendants' Counterclaims are in no way related to the FLSA claims, including, without limitation, the facts necessary to establish extreme and outrageous conduct, intent to cause severe emotional distress, and the intentional infliction of emotional harm without any excuse or justification.  These facts have "little to do with Plaintiff's wage and hour claim" and the "'potential for some slight factual overlap'" between the Counterclaims and the FLSA claims is alone "insufficient to 'provide the necessary common nucleus of operative fact' required for the exercise of supplemental jurisdiction.'"  *Moran v. Tryax Realty Mgmt., Inc.*, No. 15-cv-8570 (RJS), 2016 WL 3023326, at *3 (S.D.N.Y. May 23, 2016).

Even assuming that § 1367(a) was satisfied here, I still would decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(2), for reasons similar to those stated above.  Retaining jurisdiction over the Counterclaims would necessarily involve discovery

pertaining to numerous facts not otherwise at issue, thus overly complicating this relatively straightforward FLSA case.  *See, e.g.*, *Thomas*, 2015 WL 1809085, at *8 (attempts to litigate sexual harassment, disability discrimination, and tort claims would require more discovery and "result in the engrafting of a distinct, more complicated litigation onto a straightforward wage and hour case"); *Moran*, 2016 WL 3023326, at *3–4 (declining to exercise supplemental jurisdiction on this alternative basis because requiring document production and depositions on the plaintiff's alleged schemes "would unduly complicate this otherwise straightforward overtime case").  As such, I find that Defendants' Counterclaims would "substantially predominate[]" over Plaintiff's FLSA claims.  *See* 28 U.S.C. § 1367(c)(2).

Moreover, judicial economy, convenience, fairness, and comity do not counsel in favor of exercising jurisdiction.  *See Shahriar*, 659 F.3d at 245 (citing *Jones*, 358 F.3d at 214).  Rather, exercising supplemental jurisdiction over Defendants' Counterclaims would complicate this proceeding with "no indication that either judicial economy or convenience would be advanced." *Moran*, 2016 WL 3023326, at *4.  In fact, this case is still in its early stages, with discovery yet to formally commence, minimizing any possible inconvenience to Defendants to file their Counterclaims in state court.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 735 (S.D.N.Y. 2013) ("[I]n light of the early stage of the proceedings, it would not be particularly inconvenient for plaintiffs to refile their amended complaint in state court.").

Accordingly, I dismiss the Counterclaims pursuant to Rule 12(b)(1) without prejudice to such claims being asserted in state court.  *See Siegel v. Apergis*, 610 F. App'x 15, 16 (2d Cir. 2015) (summary order) ("[W]hen a court dismisses for lack of subject-matter jurisdiction, that dismissal must be without prejudice.").

##### C.     *The Requests to Amend*

Almost as an aside, Plaintiff and Defendants each request leave to amend their pleadings under Federal Rule of Civil Procedure 15(a).  (*See* Defs.' Opp. 16–17; Pl.'s Opp. 8.)  Neither party attaches the proposed amendments to their briefs, nor do they bring formal motions.

### 1.  Defendants' Request to Amend the Counterclaims

When addressing a motion to dismiss based on Rule 12(b)(1), it is generally the case that "defective allegations of jurisdiction may be amended."  28 U.S.C. § 1653.  Section 1653 is "construed liberally" to allow an action to proceed forward "if it is at all possible to determine from the record that jurisdiction exists."  *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 477 F. Supp. 615, 618 (S.D.N.Y. 1979) (citations omitted).  Without referencing § 1653, courts have also permitted amendments when those amendments "change the entire theory of subject matter jurisdiction upon which the parties rely."  *Id.* (citations omitted).  The fact that it is defendants who seek to amend pleadings is not a bar to amendment when the defendants are asserting counterclaims.  *See id.* at 619 n.6.

As stated above, I find that dismissal of Defendants' Counterclaims is warranted under Rule 12(b)(1).  To the extent that Defendants intend to amend the Counterclaims to assert "essentially the same claim," and to the extent that Defendants would simply "flesh out the connection [to the FLSA claims] a bit more" by making it "more clear" that the sexual messages occurred during Plaintiff's period of employment, (8/27 Tr. 3:2-4:23), there are no averments Defendants could add to their Counterclaims to alter my decision that I lack supplemental jurisdiction over those particular claims.  In other words, I find any amendment along these lines would be futile.  As a result, Defendants' request for leave to amend is DENIED without prejudice to Defendants asserting appropriate counterclaims in response to Plaintiff's Amended

Complaint consistent with this decision.

### 2. Plaintiff's Request to Amend the Amended Complaint

Plaintiff requests to amend the Amended Complaint to "bolster existing claims." (Pl.'s Opp. 8.) Defendants oppose this request, arguing that (1) Plaintiff has already amended the complaint, and (2) prior to Defendants filing their motion to dismiss and following the pre-motion conference held before me, I allowed Plaintiff several weeks to consider whether he wished to amend the pleadings, in particular with respect to Counts XII and XIII, prior to the commencement of briefing. (Defs.' Reply 10–11; 8/27 Tr. 12:4-13:16.)[13] Thus, Defendants argue that Plaintiff request to amend in being made in bad faith and with undue delay. (Defs.' Reply 10–11.) Defendants further claim that any amendment with respect to Counts XII and XIII would be futile. (*Id.* at 11.)

Because Plaintiff's request to amend is conditioned on my finding the Amended Complaint insufficient in its pleadings, (Pl.'s Opp. 8), in evaluating Plaintiff's request I consider only the merits of any amendment of Counts XII and XIII. I note at the outset that while Plaintiff was given an opportunity to amend for a second time before briefing and chose not to do so, this case is still at the early stages and, as such, I would not deny the motion to amend based solely on any undue delay. *But see Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 703 (2d Cir. 1985) ("The purpose of amending a pleading 'is to assert matters that were overlooked or were unknown . . . at the time . . . [of the] original complaint or answer.'" (alteration in original) (citation omitted)). Still, I do consider Plaintiff's choice not to amend as somewhat telling—although not determinative—with respect to whether the amendments would

---

[13] "Defs.' Reply" refers to Defendants' Reply Memorandum of Law in Support of Defendants' Motion to Dismiss. (Doc. 36.)

cure the defects in the pleadings.  In any event, I find that any amendment of Counts XII and XIII would be futile and, in this regard, deny Plaintiff's motion to amend.

First, with respect to Count XII (violations of 26 U.S.C. § 7434), any supporting facts would be rank speculation.  To the extent that Plaintiff intends, as expressed during the conference before me, to add allegations that the restaurant pays in cash and does not give out W2 forms, (8/27 Tr. 7:22-8:14), this would not be sufficient to state a claim under § 7434 for the same reasons noted above.

Similarly, Plaintiff's request to amend his section 349 claim is futile.  Even if Plaintiff were to supplement his Amended Complaint with additional facts bolstering his allegations regarding Defendants' behavior toward their employees, this would not transform this employment dispute into a case concerning "consumer-oriented" conduct with a broader impact on consumers.  *See Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25.  As a result, I find that amending Counts XII and XIII in the Amended Complaint would be futile and deny Plaintiff's request to amend.

## V.     <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is

GRANTED with regard to Counts XII and XIII, and DENIED with regard to Counts I through

XI.  Plaintiff's motion to dismiss the Counterclaims is GRANTED and Defendants'

Counterclaims are dismissed without prejudice to such claims being asserted in state court.  The

motions of Plaintiff and Defendants to amend their respective pleadings are DENIED.  The Clerk

of Court is respectfully directed to terminate the open motions at Documents 26 and 29.


        SO ORDERED.

Dated: September 26, 2017
        New York, New York

Vernon S. Broderick
United States District Judge